[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 1529
On March 30, 1990 the plaintiff, Uptown Federal Savings and Loan Association (hereafter "Uptown"), instituted this procedure to foreclose a mortgage executed by defendant, Esther A. Define (hereafter "Define"), securing a promissory note in the principal amount of $90,000.00. The note and mortgage were originally executed on August 18, 1986, in favor of The Dime Real Estate Services — Connecticut, Inc., and simultaneously assigned to The Dime Savings Bank of New York, F.S.B.
On August 22, 1986, the defendant "quitclaimed to Mutual Realty Investment Corp. all of her right, title and interest in said premises," in accordance with two separate rider provisions accompanying the mortgage and promissory note, which provide, in relevant part:
 the Lender will not require immediate payment in full if all or any part of the Property, or if any right in the Property is sold or transferred without Lender's prior written permission.
 I will continue to be responsible for all of my promises and agreements under the Note and the Mortgage even if I sell or transfer the Property to someone else, unless the Lender releases me in writing from the promises and agreements.
On December 19, 1986, The Dime Savings Bank of New York assigned its interest in the property to the plaintiff by an assignment executed in New York. As a result of the assignment, Uptown commenced the instant foreclosure because "[t]he installment of principal and interest due December 1, 1988, and each and every month thereafter have not been paid, and the plaintiff has exercised the option to declare the entire balance due on the note due and payable." The return day of that proceeding was April 17, 1990.
On December 4, 1990, the defendant filed an answer, CT Page 1530 special defense, and a counterclaim. According to the special defense, the "Defendant rescinded said transaction and the plaintiff, its counsel, and/or its agents, The Dime Savings Bank of New York, FSB, did not respond, therefore, the alleged mortgage is not enforceable." In the counterclaim, Define seeks monetary damages based upon various disclosure violations of the state and federal Truth In Lending Acts (TILA), General Statutes, Sec. 36-393 et seq. and 15 U.S.C. § 1601 et seq. In addition, she claims rescission because:
 7. Defendant on or about August 7, 1989 rescinded the said mortgage transaction by mailing the notice of rescission to The Dime Savings Bank of New York, F.S.B., and to plaintiff's counsel.
 8. Neither the Plaintiff, its agents, or its counsel took action in response to said rescission notice.
 9. As a result of the failure to take action pursuant to the defendant's notice of rescission, defendant is no longer obligated to repay said note and mortgage. In accordance with the rescission statute C.G.S., Sec. 36-407(j)(1), said transaction is unenforceable.
On October 23, 1992, Uptown filed a motion for summary judgment, which was accompanied by a memorandum of law. The memorandum contains the argument that the applicable state and federal statute of limitations entitle the plaintiff to judgment as a matter of law.
Uptown contends that the statute of limitations contained in the federal and state Truth In Lending Acts bar the special defense, thereby entitling it to judgment as a matter of law. However, prior to addressing this argument, the court must determine whether Uptown is entitled to foreclosure as a matter of law, notwithstanding the defendant's special defense. This determination, of course, requires an examination of the mortgage assignments for technical defects.
The August 18, 1986 assignment was executed in Connecticut. Here an assignment must be executed, attested CT Page 1531 and acknowledged in the manner prescribed by law for the execution, attestation and acknowledgment of deeds of land before title vests in the assignee. (Emphasis added.) General Statutes, Sec. 49-10. According to section 47-5, all conveyances of land shall be (1) in writing; (2) signed by the grantor; (3) acknowledged by the grantor; and (4) attested to by two witnesses with their own hands. As a result, the assignment must be acknowledged by the grantor before title vests in the assignee. In the present case, the notary reads that Esther A. Define personally appeared before the notary, and not the authorized signatory, Raymond Durand, who is the president of The Dime Real Estate Services — Connecticut. The first assignment simply does not comply with Sec. 49-10 because the assignment does not show that the authorized signatory acknowledged the execution of the instrument. Title did not vest in The Dime Savings Bank of New York, F.S.B.
Next, on December 19, 1986, The Dime Savings Bank of New York, F.S.B. assigned its interest to Uptown. According to the notary, the assignment was executed in New York. In New York, "[t]he rule is that the validity of a conveyance of a property interest is governed by the law of the place where the property is located." (Citation omitted.) James v. Powell, 279 N.Y.2d 10, 15, 225 N.E.2d 735 (1967). This court, therefore, must apply Connecticut law, which, as set forth above, requires the assignment to be attested to by two witnesses with their own hands. Upon review, it becomes apparent that the second assignment does not comply with Sec. 49-10 because it was not attested to by two witnesses with their own hands; therefore, title has not vested in Uptown. Uptown is not entitled to judgment as a matter of law.
Since the assignments are flawed, the motion for summary judgment permits the court to avoid addressing Uptown's argument that 15 U.S.C. § 1635(f) and General Statutes, Sec. 36-407(j) of the General Statutes bar the defendant's special defense. "Judgments are rendered on complaints or counterclaims, or on specific counts of complaints or counterclaims, but there is no provision in Connecticut practice for a `judgment' to be entered on a special defense." (Emphasis added.) Rigers v. Daly Development Co., Inc., 3 Conn. L. Rptr. 76, 77 (December 19, 1990, Pickett, J.). Despite the foregoing, this court chooses to address CT Page 1532 those arguments.
Initially, as recited infra, Uptown argues that the defendant's special defense is barred by15 U.S.C. § 1635(f), 12 C.F.R. § 226.23 (Regulation Z), and General Statutes, Sec. 36-407(j)(1). U.S.C. title 15, Sec. 1635(f) provides, in relevant part, that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ." However, according to 12 CRF, Sec. 226.23, the defendant's right to rescind automatically lapses on the occurrence of the earliest of the following three events: (1) the expiration of the three years after consummation of the transaction; (2) the transfer of all of the consumer's interest in the property; and (3) the sale of the consumer's interest in the property. (Emphasis added.) In addition, the Board of Governors, in an official staff opinion, reiterated that the right to rescind automatically lapses upon the transfer of all the consumer's interest in the property. Board of Governors of Federal Reserve System Official Staff Interpretation TIL-1,48 Fed. Reg. 14887. "The Federal Reserve Board staff opinions expressed in Public Information Letters, as well as in Official Staff Interpretations, should be given great deference by courts since the United States Supreme Court has held that `[u]nless demonstrably irrational, Federal Reserve Board staff opinions construing the [TILA or regulations] should be dispositive . . . .'" (Citation omitted.) Household Finance Corporation v. Nival, 37 Conn. Sup. 606,609 n. 3. On August 22, 1986, the defendant conveyed all the right, title, interest, claim and demand whatsoever as she may have had in the mortgaged property to Mutual Realty Investment Corp. Define, by conveying her entire interest in the mortgaged property, lost the right to rescind the transaction under federal law.
Although her right to rescind under federal law lapsed, the defendant, in the special defense, did not specify whether the federal or state statute is relied upon as basis for the right to rescission. General Statutes, Sec. 36-407(j)(1) is identical to its federal counterpart; however, unlike 15 U.S.C. § 1635(f), which is supplemented by Regulation Z, Sec. 36-407(j)(1) is not supplemented by a state regulation. "Under federal truth-in-lending laws, Connecticut enjoys a partial exemption CT Page 1533 from federal jurisdiction as long as Connecticut's disclosure requirement are the same as the federal requirements." Stone Stone Pension Plan v. Alston, 12 Conn. App. 670, 673. See also Household Finance Corporation v. Nival, supra, 607 n. 1: ("Pursuant to regulation Z, 12 C.F.R. § 226.12, Connecticut has been granted an exemption from the federal Truth-in-Lending Act; 15 U.S.C. § 1601 et seq.; and the regulations promulgated thereunder.") As a result, the right to rescind, created by Sec. 36-407, lapses only after the expiration of three years from the consummation of the transaction or after the sale of the property.
In the present case, the transaction was consummated on August 18, 1986, the date the defendant executed the mortgage; and the defendant exercised the right of rescission on August 7, 1989, the date the defendant sent a letter invoking the right to rescission. General Statutes, Sec. 36-407(j)(1) incorporates the right of rescission created by15 U.S.C. § 1635. According to 15 U.S.C. § 1635(a), "the obligor shall have the right to rescind the transaction . . . by notifying the creditor, in accordance with the regulations of the Board, of his intention to do so." (Emphasis added.) As a result, the obligor exercises the right of rescission by notifying the creditor; therefore, since the defendant sent a letter invoking the right of rescission on August 7, 1989, the defendant exercised the right to rescission within three years from the consummation of the transaction, August 18, 1986.
Although the right to rescind was exercised within three years from the consummation of the transaction, the right to rescind under Sec. 36-407 also lapses upon the sale of the property. On August 22, 1986, the defendant conveyed the property to Mutual Realty. A sale is the "[t]ransfer of property for consideration in money or its equivalent." Black's Law Dictionary 1200 (5th ed. 1979). According to the quitclaim deed, the property was conveyed "for the consideration of less than One Hundred Dollars ($100.00)." This raises a genuine issue of material fact as to whether Define transferred the property for consideration in money or its equivalent. However, it should be noted that, although credit transactions within the State of Connecticut have been exempted from the requirements imposed by the federal act; Hartford Federal Savings Loan Assn. v. Green, 36 Conn. Sup. 506,511-512, 412 A.2d 709 (App. Sess. 1979); transactions in CT Page 1534 which a federally chartered institution is a creditor are not exempted from the requirements of the federal act.35 Fed. Reg. 11992 (1970).
In Connecticut, where a federally chartered institution is the creditor, it has been held that only the Federal Act should be applied to the case. Hartford Federal Savings 
Loan Assn. v. Green, supra, 511-12; see also Robinson v. Olin Credit Union, 48 B.R. 732, 738 (D.Conn. 1984) (District Court mentions Hartford Federal in its ruling that the State Act does not apply to cases involving federally chartered institutions). In the present case, the plaintiff, who acquired the mortgage via a series of assignments involving The Dime Real Estate Services — Connecticut, Inc. and The Dime Savings Bank of New York, F.S.B., is Uptown Federal Savings Loan Association. The court elects to follow Hartford Federal which applies the federal statute; therefore, Define's right to rescission lapsed when the defendant transferred her entire interest in the property.
Next, Uptown requests a summary judgment on Define's counterclaim which seeks money damages and rescission based upon various TILA violations. Her right to rescission was addressed above, and the analysis applies equally to the counterclaim. However, she also seeks money damages. In response to Define's counterclaim seeking damages, Uptown, in its special defense and memorandum of law, asserts that the counterclaim is barred by 15 U.S.C. § 1640(e) and General Statutes, Sec. 36-407(e), which are substantially identical and provide that "[a]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation." In the present case, the mortgage and promissory note were executed on August 18, 1986, and the action was commenced on March 16, 1990. The violations alleged in the defendant's counterclaim did not occur within one year of the date of this action.
Nevertheless, the federal and state statutes "[do] not bar a person from asserting a violation of this title in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action." Initially, the plaintiff argues that the recoupment exception is inapplicable because a mortgage foreclosure is not an action to collect a debt because it does not seek a money CT Page 1535 judgment. However, in the present case, and in virtually all foreclosure actions, the mortgagee seeks a deficiency judgment; therefore, as in First State Bank v. Phillips,13 Ark. App. 157, 681 S.W.2d 408, 410 (1984), where the court did not specifically state that a foreclosure action was an action to collect a debt, but allowed the recoupment defense, this court will allow the recoupment defense in foreclosure actions. Uptown has instituted an action, at least in part, to collect a debt.
It next argues that Define's counterclaim is not a recoupment defense. "Recoupment means `keeping back something which is due, because there is an equitable reason to withhold it.' [Citation omitted.] The defense of recoupment has two characteristics: (1) the defense arises out of the transaction constituting the plaintiff's cause of action; and (2) it is purely defensive, used to diminish or defeat the plaintiff's cause, but not as the basis for an affirmative recovery." Genovese v. J. N. Clapp Co., 4 Conn. App. 443,445. "It may be asserted even though defendant's claim, as an independent suit, is barred by the statute of limitations." (Citations omitted.) Id., 446. In the present case, Uptown alleges disclosure violations in connection with the mortgage transaction; therefore, the counterclaim arises out of the transaction constituting Uptown's cause of action, a foreclosure of the mortgage. In addition, although the defendant has brought a counterclaim and not a special defense, the counterclaim is within the recoupment exception. See Jewitt City Trust Co. v. Grey,35 Conn. Sup. 508, 390 A.2d 948 (1977). However, the defendant may only "cut down to the full amount of the plaintiff's claim, but may not recover for any balance due him." Id., 510. Accordingly, the court denies Uptown's motion for summary judgment on the defendant's counterclaim.
In conclusion, the court denies Uptown's motion for summary judgment for the following reasons:
(1) the mortgage assignments do not comply with General Statutes, Secs. 49-10 and 49-5; and
(2) the defendant's counterclaim is not barred by the one-year statute of limitations contained in General Statutes, Sec. 36-407(e) or 15 U.S.C. § 1640(e) because, pursuant to both statutes, a person may assert a violation of CT Page 1536 TILA in an action to collect a debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or setoff.
Moraghan, J.